UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BARBARA J. HANRAHAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:10-CV-00502-JD |
| | ) |
| THE UNIVERSITY OF NOTRE DAME | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Now before the Court is Defendant, the University of Notre Dame's, Motion for Judgment on the Pleadings [DE 24] filed on June 15, 2011, Plaintiff's Response [DE 27] filed on June 29, 2011, and Defendant's Reply [DE 29] filed on July 11, 2011. For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings which successfully raised the affirmative defense based on the statute of limitations is hereby **GRANTED**. The case is **DISMISSED WITH PREJUDICE**. *See Threadgill v. Moore U.S.A., Inc*., 269 F.3d 848, 849, 851 (7th Cir. 2001) (affirming the district court's dismissal with prejudice of a lawsuit that was time-barred due to the plaintiff's failure to timely file the lawsuit after receipt of the right to sue letter).

**I. BACKGROUND**

On December 1, 2010, Plaintiff, Barbara J. Hanrahan, filed a Verified Complaint against the University of Notre Dame. [DE 1]. The six count Complaint alleged age discrimination under the Age Discrimination in Employment Act ("ADEA"), retaliation, constructive discharge, wrongful discharge, breach of contract, and intentional infliction of emotional distress. *Id*. By June 15, 2011, Hanrahan had twice amended her Complaint, and she now alleges only a single count of age discrimination under the ADEA against Notre Dame. [DE 21]. Attached to Hanrahan's Second

Amended Complaint is a copy of her Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC") on July 6, 2010 [DE 21-1, Exhibit A], her Notice of Right to Sue letter dated September 14, 2010 [DE 21-2, Exhibit B], and various attestation letters [DE 21-3, Exhibit C]. On June 15, 2011, Notre Dame filed its Answer and Affirmative Defenses [DE 23], along with its Motion for Judgment on the Pleadings [DE 24]. The matter is ripe for ruling.

## II. STANDARD OF REVIEW

A Rule 12(c) motion for judgment on the pleadings permits a party to move for judgment after the pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Therefore, the court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the non-moving party, *Matrix IV, Inc. v. Am, Nat. Bank and Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011), but to survive the motion, the complaint must contain enough facts to state a claim for relief that is plausible on its face. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (relying on *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see McCauley v. City of Chi.*, No. 09-3561, — F.3d. —, 2011 WL 4975644 *3-6 (7th Cir. Oct. 20, 2011) (explaining that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Court need not accept as true legal conclusions or threadbare recitals of the elements of a cause of action supported by mere conclusory statements. *Id*.

Additionally, Rule 10(c) describes the type of materials that can be considered to be part of the pleadings:

> A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.

Fed. R. Civ. P. 10(c). This means that a court can consider for purposes of a Rule 12(c) motion, documents that are referred to in the pleadings and are central to the plaintiff's claims. *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *see Carroll v. Yates*, 362 F.3d 984, 986 (7th Cir. 2004) (dismissal on the basis of facts in a written instrument attached as an exhibit to a pleading is proper only if the plaintiff relies upon it to form the basis of his claim or part of a claim). Further, when the complaint itself contains everything needed to show that the defendant must prevail on an affirmative defense, then the court can resolve the suit on the pleadings under Rule 12(c). *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 658 F.3d 662, 665 (7th Cir. 2011) (citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (ruling on a motion to dismiss which raised the affirmative defense based on the statute of limitations where the relevant dates were unambiguously set forth in the complaint)); *see Thompson v. Ill. Dept. of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) (where a plaintiff attaches documents and relies upon the documents to form the basis for a claim, dismissal is appropriate if the document negates the claim).

### III. FACTS

Hanrahan was hired as the Director of the University of Notre Dame Press in July 1999 under the terms that her contract would be renewed annually so long as she was satisfactorily performing her job.[1] [DE 21, ¶¶ 29, 98]. In relevant part, Hanrahan was notified by a letter dated March 27, 2009, that she was reappointed as Associate Professional Specialist from July 1, 2009 through June 30, 2010. *Id.* at ¶¶ 29, 43. On September 17, 2009, Hanrahan was advised that her

---

[1] At the time of her appointment, Hanrahan reported to the Office of the Provost through the Senior Associate Provost. [DE 21 at ¶ 34].

reappointment was going to be considered and that she had an opportunity to submit a written statement or other documentation on her behalf, which Hanrahan did. *Id*. at ¶¶ 49-51. On December 17, 2009, Hanrahan had a scheduled meeting with Suzan Ohmer, Associate Professor of Film, Television and Theater for Notre Dame, at which time Hanrahan received a letter (dated December 15, 2009) from Christine Maziar, Notre Dame's Vice-President and Senior Associate Provost, advising her that Notre Dame would not be renewing her appointment as Director of Press, and that her employment would terminate on June 30, 2010. *Id*. at ¶¶ 12, 13, 52. The letter did not state a reason or justification for her termination; however, it indicated that Hanrahan could request a final terminal year contract for the 2011 fiscal year. *Id*. at ¶¶ 53-54. Hanrahan was advised that she could appeal the decision, but Notre Dame did not have a listed option in its Academic Articles for appealing the decision on the basis of age discrimination. *Id*. ¶¶ 55-58.

On January 21, 2010, Maziar and Ohmer met with Hanrahan and discussed whether she would be interested in pursuing a one year non-renewable terminal contract with a phased retirement where she would have emeritus status, take on a more limited role as Acquisitions Editor, and still have access to full health benefits. [DE 21, ¶ 59, 109, 97, 98]. Hanrahan indicated that she was interested and Maziar explained that it might take a few weeks for the proposal to be prepared and presented. *Id*. at ¶ 60, 98.

In a subsequent meeting with Ohmer, Hanrahan attempted to discuss transitional issues with Ohmer, but Ohmer would not discuss these issues with Hanrahan and instead criticized Hanrahan's work and manner of dealing with the Editorial Board. *Id*. at ¶¶ 20-25 63, 64. The fact that no discussions were held about the transition increased Hanrahan's anxiety and sense of a hostile and unproductive work environment. *Id*. at 64. Because Hanrahan believed that her acquisitions work

4

was not being given due consideration, she requested and received endorsement letters which she sent to Ohmer, Maziar, and Thomas Burish, the Provost of Notre Dame. [DE 21 at ¶¶ 10, 65].

On March 24, 2010, Ohmer advised Hanrahan that her final year paperwork was completed and it was time to schedule a meeting to move ahead on the issue. [DE 21 at ¶¶ 62, 66]. On March 29, 2010, Hanrahan met with Ohmer and was presented with two versions of a terminal year contract signed by Maziar. *Id*. at ¶¶ 67-71. One version offered Hanrahan a non-renewable terminal one year appointment from July 1, 2010 to June 30, 2011 as Associate Professional Specialist and Acquisitions Editor. *Id.* at ¶ 69, 115. The other version, which was given "at [Hanrahan's] request," accepted Hanrahan's resignation effective June 30, 2010 with the assumption of emeritus status, and it included "the conditions of [Hanrahan's] retirement as discussed with Ohmer," in that Hanrahan would be given a non-renewable extension as Associate Professional Specialist from July 1, 2010 to June 30, 2011 with her serving as the Acquisitions Editor at her current salary, and upon her retirement she would be eligible to participate in retirement health care and life insurance plans. *Id.* at ¶¶ 59, 70, 71, 97, 98, 117.

On April 16, 2010, Hanrahan wrote a letter to Ohmer rejecting the offer of a terminal year contract and explaining that it was Hanrahan's belief that the formal offer discriminated against her on the basis of her age because she would "soon be 63 years of age and nearing [her] retirement," and therefore, she was appealing Notre Dame's decision of December 15, 2009. [DE 21, ¶¶ 72-74, 98, 119]. When her contract expired on June 30, 2010, Hanrahan was effectively terminated at age 63. *Id*. at ¶ 26. On July 6, 2010, Hanrahan filed a charge of discrimination with the EEOC alleging age discrimination. [DE 21 at ¶ 4; DE 21-1, Exhibit A].

5

## IV. DISCUSSION

For purposes of this motion the facts are not in dispute; instead, the parties disagree on a matter of law—that is, the date upon which the 180-day EEOC statute of limitations began to run.

Notre Dame contends that the statute of limitations began on December 17, 2009 (which is when Hanrahan was given notice that her employment would terminate on June 30, 2010, or on June 30, 2011 if she requested a terminal year contract); and therefore, her last day to file a charge with the EEOC was June 15, 2010. [DE 25 at 2-3].

Hanrahan contends that the 180-day EEOC statute of limitations did not begin to run until March 29, 2010, when she first suspected age discrimination during the meeting about her retirement because she realized that her employment would end at age 63; and thus, Hanrahan had until September 25, 2010 to file her claim with the EEOC. [DE 27]. Hanrahan also suggests that her EEOC charge could be considered timely if the March 29, 2010 meeting represented a continuing violation of age discrimination which restarted the clock.[2]

The Court addresses each of these arguments.

**A.      Discovery Rule**

The parties agree, as does the Court, that in Indiana the ADEA requires plaintiffs to file a charge of age discrimination with the EEOC within 180-days after the alleged incident of

---

[2]The Court notes that Plaintiff's continuing violation argument is made in two short paragraphs with little detail as to the basis of the argument. [DE 27 at 10]. While the Court is not obliged to research and construct legal arguments for parties, especially when they are represented by counsel, the Court considers the undeveloped argument as best it can instead of summarily rejecting it. *See Nelson v. Napolitano*, 657 F.3d 586, 589 (7th Cir. 2011) (noting that the party's failure to make a cogent argument was reason enough for the district court to deny the motion).

discrimination.[3] 29 U.S.C. § 626(d)(1)(A); *see Haselby v. Logansport Memorial Hosp. Bd. of Trustees*, 2011 WL 1811686 *1 (N.D. Ind. May 12, 2011) (finding that in Indiana an ADEA plaintiff is required to file a charge of discrimination with the EEOC within 180-days after the unlawful practice occurred). "A plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful." *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995). Again, Notre Dame believes that the 180-days began to run on December 17, 2009, when Hanrahan was given notice of her termination, whereas, Hanrahan contends that the statute of limitations began to run on March 29, 2010, when she first suspected age discrimination.

However, Hanrahan confuses the discovery rule with the doctrines of equitable tolling and estoppel and the continuing violation theory, and argues that her cause of action did not accrue until the March meeting, because it was at that meeting when it first became "clear to [her] that the University discriminated against her due to her age, as she was soon going to be 63 years of age and nearing her retirement." [DE 27 at 6, 9]. But the mere fact that Hanrahan had a sudden epiphany on March 29 (for reasons that she never explains) and realized that she would be 63 years old when her employment ended, has nothing to do with the accrual of her cause of action. In this case, Hanrahan knew on December 17, when "she was handed a letter dated December 15, 2009 by Ohmer terminating her employment" [DE 21, ¶ 20], that her employment was not being renewed. Therefore, the 180-day period began to run on December 17—when she was notified of the adverse

---

[3]Title VII and the ADEA require plaintiffs to meet strict deadlines in order to preserve their claims: in Indiana, EEOC charges must be filed within 300-days of the alleged incident of race or sex discrimination, and within 180-days of the alleged incident of age discrimination. *EEOC v. North Gibson School Corp.*, 266 F.3d 607, 617 (7th Cir. 2001) (ADEA), abrogated on other grounds, *EEOC v. Waffle House, Inc.,* 534 U.S. 279 (2002); *Minor v. Ivy Tech State College,* 174 F.3d 855, 857 (7th Cir.1999) (Title VII); *see Daugherity v. Traylor Bros., Inc*., 970 F.2d 348, 350 n.2 (7th Cir. 1992); *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534, 541-42 (7th Cir. 1988); *Sikora v. Honeywell Intern., Inc.*, 2008 WL 2756258 *5 (N.D. Ind. July 11, 2008).

employment decision—not in March when she finally realized for unknown reasons that age might have something to do with the December 17 decision.

The Seventh Circuit's decision in *Thelen* supports this finding. In *Thelen*, the plaintiff was informed in November of 1987 that he would be terminated effective December of 1987. *Thelen,* 64 F.3d at 267. At the time of the termination, the plaintiff did not suspect age discrimination. *Id.* In October of 1988, the plaintiff discovered that he was replaced by someone younger than himself. *Id.* Believing only then that he was the victim of possible age discrimination, the plaintiff filed a charge with the EEOC. *Id.* But the Seventh Circuit concluded that the plaintiff was injured when he was terminated, and that the plaintiff "discovered" his injury on the date he was terminated, which was in November. *Id.* As a result, the plaintiff's ADEA claim was time barred. *Id.*

Similarly, Hanrahan's injury occurred on December 17, 2009, when she was given notice of her termination and an option to seek a final terminal year contract. After receiving her December 17 termination letter, Hanrahan told Notre Dame in January that she was interested in pursuing a final terminal year contract with added conditions of retirement and she repeatedly attempted to discuss transitional issues with Notre Dame. Consistent with Notre Dame's December 17 notice that Hanrahan's appointment would not be renewed and consistent with Hanrahan's subsequent request for the terminal year contract, Notre Dame presented the terminal year contract options to Hanrahan in March.[4] There is no dispute that Hanrahan's injury was her termination and that she was aware

---

[4] Hanrahan does not allege that the manner in which her employment was terminated differed discriminatorily from the manner in which Notre Dame terminated other employees whose contracts were renewed annually. *See Delaware v. Ricks*, 449 U.S. 250, 257-58 (1980). Rather, every year Hanrahan received notice of whether her employment was being renewed, and in December 2009 Hanrahan was offered a 1-year terminal contract with explicit notice that her employment would end upon its expiration. Hanrahan does not attempt to identify any similarly situated employee who was treated more favorably with respect to being non-renewed and provided terminal year contract options.

8

of her injury on December 17. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify."). As a result, the 180-day EEOC statute of limitations began to run on December 17, 2009, and the alleged discriminatory discrete act is not actionable if time barred. *Id*. at 113-14 (noting that there may be circumstances where it will be difficult to determine when the injury occurs as opposed to when the injury reasonably should have been discovered, but such an issue was not presented in this particular case); *Thelen*, 64 F.3d at 267; *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 550 (7th Cir. 1994) (explaining that the discovery of information from which plaintiff ascertained the unlawful nature of the termination has nothing to do with the accrual of the claim, and plaintiff is really insisting that the limitations clock should be equitably tolled for the time in which he was unable to determine that the injury (of which he was aware) was due to wrongdoing); *see Williamson v. Ind. Univ.*, 345 F.3d 459, 463 (7th Cir. 2003) ("The 180-day period begins to run on the date that the employee is notified of the adverse employment decision.").

Because Hanrahan discovered her termination on December 17, 2009, the last date for filing a complaint was June 15, 2010; consequently, Hanrahan's filing of her EEOC administrative complaint on July 6, 2010 is untimely, unless equitable doctrines of tolling or estoppel, or a continuing violation, make her claim timely.

**B.      Equitable Remedies**

Like a statute of limitations, the 180-day filing limitations period prescribed by the ADEA is subject to equitable modification. *Casteel v. Executive Bd. of Local 703 of Intern. Broth. of Teamsters,* 272 F.3d 463, 467 (7th Cir. 2001) (citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-52 (7th Cir. 1990)). Hanrahan does not specify that she is relying on a doctrine of equity,

9

but her undeveloped 'continuing violation' argument leads the Court to believe that she might be ambiguously arguing that one of two equitable doctrines are conceivably at play: (1) equitable estoppel, which applies if the defendant takes active steps to prevent the plaintiff from suing in time, or (2) equitable tolling, which requires a plaintiff to show that he could not by the exercise of reasonable diligence have discovered essential information bearing on his claim. *Id.*

Under the theory of equitable estoppel, the Court considers whether it can halt the running of the statute of limitations for any of the time between Hanrahan's December 17, 2009 discharge notice and her meeting on March 29, 2010. To apply equitable estoppel Notre Dame had to take active steps to prevent Hanrahan from filing an EEOC charge on time, such as by hiding evidence or promising not to plead the statute of limitations. *See Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 554 (7th Cir. 1996). However, Hanrahan does not allege that after she received her termination notice in December, Notre Dame did or said anything which prevented her from suing on time, that Notre Dame gave her false or misleading information, or that Notre Dame promised not to plead the limitations as a defense. Rather, Hanrahan readily admits it was her own sudden realization in March (after she was presented with two versions of a terminal year contract) that her employment would terminate at the age of 63—which led to her conclusion that she was the victim of age discrimination. Hanrahan never explains why or how the presentation of the terminal year contracts led her to that conclusion, other than to say that she would be 63 years old when her employment terminated. But this fact was equally apparent on March 29, as it was on December 17 when she was given the original notification of termination and option of a terminal year contract. In addition, the mere fact that Notre Dame never gave her a reason for her termination or never provided an appeal route for age discrimination in its Academic Articles does not constitute

fraudulent concealment or suggest that Notre Dame took active steps to prevent Hanrahan from filing an EEOC charge on time. Simply put, Hanrahan points to no evidence that would satisfy this standard.

Under the theory of equitable tolling, a plaintiff may avoid the bar of the statute of limitations when despite all due diligence, a plaintiff is unable to obtain enough information to realize that he may have a discrimination claim. *Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010). The Seventh Circuit has stated:

> We do not think equitable tolling should bring about an automatic extension of the statute of limitations by the length of the tolling period or any other definite term. Cf. *EEOC v. O'Grady,* 857 F.2d 383, 392 (7th Cir.1988). It is, after all, an equitable doctrine. It gives the plaintiff extra time if he needs it. If he doesn't need it there is no basis for depriving the defendant of the protection of the statute of limitations. Statutes of limitations are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy, and repose. The statute of limitations is short in age discrimination cases as in most employment cases because delay in the bringing of suit runs up the employer's potential liability; every day is one more day of backpay entitlements. We should not trivialize the statute of limitations by promiscuous application of tolling doctrines.

*Cada*, 920 F.2d at 452-53. *See also Elmore v. Henderson*, 227 F.3d 1009, 1013 (7th Cir. 2000) (declining to apply equitable tolling because plaintiff delayed four months to refile his complaint); *Haselby*, 2011 WL 1811686 *2 (listing cases and noting that the Seventh Circuit's "reasonable time" for equitable tolling consists of days or weeks, not months).

Moreover, equitable tolling does not postpone the running of the statute of limitations until the plaintiff is certain his rights had been violated, rather, the limitations period begins to run when a reasonable person would believe he may have a cause of action. *Thelen*, 64 F.3d at 268. Unlike equitable estoppel, the court does not grant the plaintiff a fresh 180-days to file the charge once he

11

obtains enough information to suspect discrimination; he must file his charge with the EEOC within a reasonable time. *Id*.

Here, any equitable tolling argument fails. Hanrahan learned on December 17 that she was being terminated with the option of a terminal year contract. Hanrahan was never given a reason for her termination[5] and she was never instructed that she could appeal on the basis of age;[6] however, her only contention is that during the March meeting it suddenly occurred to her that her employment would end at the age of 63. Again, Hanrahan does not state why, once presented with terminal year contracts, she finally realized that she could be the victim of age discrimination—other than to state that she would be 63 years old when her employment ended. However, Hanrahan knew in December that her employment would end at the age of 63. Hanrahan does not explain what additional information she obtained in March that allowed her to realize that she may have been discriminated against. If Notre Dame's December decision is best explained by her age rather than a lawful reason, that was equally apparent on December 17 and March 29.

Moreover, even accepting Hanrahan's argument that she was unaware of any possible discrimination until the meeting took place on March 29, the facts clearly show that she still had until June 15, or 78 days, to file a timely administrative complaint once she suspected her unlawful termination. When as here, the necessary information is gathered after the claim arose, but before the statute of limitations has run, the presumption should be that the plaintiff could bring suit within

---

[5]Admittedly, an employer need not proclaim its bias as a precondition to the starting of the limitations period. *See Lever v. Nw. Univ.*, 979 F.2d 552, 556 (7th Cir. 1992).

[6]Hanrahan does not argue that the filing period should have been equitably tolled until she retained an attorney or until she became familiar with her rights not to be discriminated against on account of age. *See Schroeder v. Copley Newspaper*, 879 F.2d 266, 271-72 (7th Cir. 1989). Instead, she relies on the circumstances of her termination which culminated into her understanding in March (for unexplained reasons) that the decision to fire her might have been based on age.

the statutory period and should have done so. *See Cada*, 920 F.2d at 453. Hanrahan could have prepared an EEOC charge within days of the March 29th meeting because there is no duty of pre-filing investigation or inquiry in EEOC proceedings (as is required for federal court actions). *See Thelen*, 64 F.3d at 268. at 452 (noting that one purpose of filing an administration complaint is to uncover facts relevant to the case). Hanrahan has not shown that despite due diligence she was unable to timely obtain enough information to realize that she may have a discrimination claim, nor can she show that she filed her claim within a reasonable time after she obtained the necessary information at the March meeting.

The Court finds that the 180-day statute of limitations began to run on December 17, 2009, the day that Hanrahan was notified of and actually knew about her impending termination. Therefore, the filing period ended on June 15, 2010. The Seventh Circuit has time and again emphasized the social importance of the limitations periods for suing. *See Elmore*, 227 F.3d at 1013 (listing cases). Such deadlines minimize legal uncertainty both about the outcome of eventual litigation and about the existence and scope of the potential defendant's liability. *Id.* Because Hanrahan has failed to show an exception under an equitable estoppel or equitable tolling theory, Hanrahan's age discrimination claim is barred by the statute of limitations.

**C.     Continuing Violation based on the March Meeting**

Hanrahan argues that the statute of limitations should start to run on March 29, 2010, because the March meeting was part of a continuous act of discrimination, even though Hanrahan never attempts to explain what discriminatory act took place during the March meeting.[7] [DE 24 at 10].

---

[7]Hanrahan's Second Amended Complaint indicates that after receiving notice of her termination in December, she then received a January email and a February letter from Ohmer criticizing Hanrahan's performance. [DE 21, ¶¶ 21-25]. However, Hanrahan has not argued that her charge of discrimination is timely because she was subjected to a an ongoing hostile work environment that fell within the statutory period. *National R.R. Passenger*

But if this were the case, the statute of limitations would not have run out until September 25, 2010, and Hanrahan's EEOC charge would have been timely.

The concept of a continuing violation "is a rather vague concept and its utility is questionable when there is a statute of limitations administered in accordance with the doctrine of equitable tolling, as the statutes of limitations applicable to the age discrimination law are." *Moskowitz v. Trs. of Purdue Univ.*, 5 F.3d 279, 281 (7th Cir. 1993). In any event, under the continuing violation doctrine, a plaintiff may obtain relief for a time-barred act of discrimination if he can link it with acts that fall within the statutory limitations period. *See Miller v. Am. Family Mut. Ins. Co.,* 203 F.3d 997, 1003 (7th Cir. 2000); *Filipovic v. K & R Exp. Sys., Inc.,* 176 F.3d 390, 396-97 (7th Cir. 1999) (explaining that the court will treat the series of continuing violations as one continuous act ending within the limitations period). The principle underlying the continuing violation doctrine is "that the plaintiff may not base her (in some cases his) suit on conduct that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of events that occurred later, within the period of the statute of limitations." *Galloway v. Gen. Motors Serv. Parts Operations,* 78 F.3d 1164, 1167 (7th Cir. 1996).

---

*Corp. v. Morgan*, 536 U.S. 101, 113-18 (2002) (providing that hostile work environment claims are different in kind from discrete acts; and treating hostile work environment claims as one unlawful employment practice such that a claim will be timely so long as any act or part of the hostile work environment claim falls within the 180-days). In fact, Hanrahan specifically makes a "continuing violation" argument. The law is clear that a hostile work environment claim is not a continuing violation, instead, it is a single violation that occurs long enough to create such an environment. *See Pruitt v. City of Chi., Ill.*, 472 F.3d 925, 927 (7th Cir. 2006) (citing *Morgan*, 536 U.S. at 115-21). Because Hanrahan does not assert this claim, the Court declines to recognize the applicability of any such claim here.

14

The Seventh Circuit has recognized three theories under which a plaintiff may establish a continuing violation, but none apply here. *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 707-08 (7th Cir. 2002); *Selan v. Kiley*, 969 F.2d 560, 565 (7th Cir. 1992). The first concerns a situation when an employer makes it difficult for the employee to determine the actual date of the alleged discrimination—in such an instance, the statute of limitations begins to run when the plaintiff knows that the decision has been made (much akin to the discovery rule). *Tinner*, 308 F.3d at 707 (citing *Jones v. Merchs. Nat'l Bank & Trust Co. of Indianapolis*, 42 F.3d 1054, 1058 (7th Cir. 1994)); *Selan*, 969 F.2d at 565 (citing *Stewart v. CPC Int'l, Inc.*, 679 F.2d 117, 120 (7th Cir. 1982)). This theory is inapplicable because Hanrahan actually knew that the alleged discriminatory act took place in December when she was given notice of her termination and the option for a terminal year contract. Even though Hanrahan requested and received options for a terminal year contract in March, Hanrahan knew about the possibility of her receiving a terminal year contract in December when she was notified of her non-renewal. After receiving her termination notice, Hanrahan knew her employment was not being renewed and she even wanted to discuss transitional issues with Notre Dame. Therefore, it cannot be said that Notre Dame's termination decision took place over a period of time.

The second theory stems from situations in which the employer has an "express, openly espoused policy that is alleged to be discriminatory." *Tinner*, 308 F.3d at 707 (citing *Stewart*, 679 F.2d at 121); *Selan*, 969 F.2d at 565 (citing *Stewart*, 679 F.2d at 121). Because Hanrahan did not allege that Notre Dame had an express, openly espoused policy of discriminating against older workers, this theory is not relevant to this case. *Id*.

The third theory concerns cases in which the plaintiff charges that the employer has, for a period of time, followed a practice of discrimination, but has done so covertly, rather than by way of an open notorious policy, and the challenged practice is evidenced only by an ongoing series of discrete, allegedly discriminatory, acts. *Tinner*, 308 F.3d at 707 (citing *Filipovic,* 176 F.3d at 396; *Young v. Will County Dept. of Pub. Aid.*, 882 F.2d 290, 292 (7th Cir. 1989)); *Selan*, 969 F.2d at 565 (citing *Stewart*, 679 F.2d at 121). Again, this is not the case here because Hanrahan knew, after receiving the termination notice in December, that she had been harmed and that she must sue over that act within the relevant statute of limitations. Further, other than the December discharge, Hanrahan sets forth absolutely no facts to suggest that other acts of discrimination may have ever occurred such that the Court could find a continuous or cumulative violation. Hanrahan's mere realization during the March meeting that she would be 63 years old when terminated, does not suggest that Notre Dame did or said anything discriminatory.

Finally, Hanrahan cannot argue that the March meeting constituted a "fresh act of discrimination" under *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-18 (2002), for which she did timely file an EEOC charge. Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. *Morgan*, 536 U.S. at 114. Here, Hanrahan suffered a discrete act of termination on December 17, 2009, when she was informed that Notre Dame would not be renewing her appointment but would offer her a terminal year contract. The March meeting did not represent a discrete act of discrimination, rather, Notre Dame was enforcing its December decision, nothing more. The Seventh Circuit has concluded that in academic tenure cases, the termination of employment is a delayed, but inevitable, consequence of the denial of tenure. *See Benders v. Bellows and Bellows*, 515 F.3d 757 (7th Cir. 2008) (citing cases). Here, the

initial decision to terminate Hanrahan was communicated by letter with a firm termination date followed by one year of continued employment. However, the mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination, thus it is the initial decision to terminate that is relevant. *Id.* Notre Dame's refusal to undo an alleged discriminatory decision is not a fresh act of discrimination. *Lever,* 979 F.2d at 556. Any alleged discriminatory act occurred on December 17, not later when Hanrahan felt the effect of Notre Dame's decision. Thus, Hanrahan cannot use the continuing violation doctrine to incorporate her untimely termination claim.

In short, it is clear that the December termination notice was connected to Notre Dame's enforcement of that decision at the March meeting. In this case, Hanrahan was informed on December 17 by way of a letter that Notre Dame would not be renewing her appointment, but she could request a final terminal year contract which she later discussed with Maziar and Ohmer. On March 29, Hanrahan was presented with two versions of a terminal year contract, in accordance with Notre Dame's December decision and Hanrahan's request for a terminal contract. Thus, the time starts with the initial decision. *See id.* (holding that "when the first decision is connected to and implies the second-when, in other words, a single discriminatory decision is taken, communicated, and later enforced despite pleas to relent-the time starts with the initial decision."). Here, Hanrahan knew that when she received the December notice, she was allegedly discriminated against and she must have sued upon that act within the relevant statutory period, not later when Notre Dame enforced its decision.

Once again, Hanrahan still had 78 days to file an EEOC charge after the March 29 meeting and before the limitations period ended on June 15, 2010. Yet, Hanrahan offers no justifiable reason for why she chose to wait until after June 15, 2010 to file her EEOC charge.

## V.  CONCLUSION

Defendant University of Notre Dame's Motion for Judgment on the Pleadings is hereby **GRANTED**.  The case is **DISMISSED WITH PREJUDICE**.

SO ORDERED.

ENTERED:  March 27, 2012

/s/ JON E. DEGUILIO
Judge
United States District Court